177 So. 648

### REEDER v. STATE.

#### 4 Div. 372.

Court of Appeals of Alabama.

Dec. 14, 1937.

Winn & Winn, of Clayton, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

BRICKEN, Presiding Judge.

By indictment appellant (defendant below) was charged with the offense of petit larceny; in that, he feloniously took and carried away a hog of the value of $15, the personal property of Albert Horn, etc. Upon the trial in the court below the defendant was tried by a jury, was found guilty, and the jury assessed a fine against him of $10. Judgment of conviction was duly pronounced and entered, and the court added three months' hard labor for the county; this part of the sentence was suspended by the trial judge until the next term of the court, pending the good behavior of the defendant. Section 5284, Code 1923. From said judgment this appeal was taken.

The case rested upon circumstantial evidence, and the material inquiry is the sufficiency of the evidence to sustain the judgment of conviction. Appellant insisted that the State failed to meet the necessary burden of proof and that the court erred in refusing to defendant the general affirmative charge.

The corpus delicti was proven without dispute. Horn, the injured party, among other things, testified: "I know the defendant, Albert Reeder. I live in about a mile of him now; in the spring of 1936 I lived in about a mile and a half of him. Prior to the meeting of the grand jury for the Spring Term of the Court, 1936, I missed some hogs; that was about the 20th of February; I missed two black hogs, a sow and a barrow; the sow, at the market price, on her feet, would have been worth $25.00, but she was with pigs; the other one was worth at least $15.00; one would have weighed 300 on her feet and the other one around 200. The sow

was an Essex sow with short thin hair, practically no hair at all, with a little short nose; and the barrow had long coarse black hair as long as your finger. I missed them on Thursday night. I did not make a search for them until Saturday. I waited through Friday and Friday night and they still didn't show up; it was their custom to come up every night, and Thursday was the first night they missed. No one went with me on my search first; after I found out what I did I went to Albert Johnson, it was on his place, and got him and carried him up and showed what I found; that was Saturday afternoon, and Sunday morning I got Mr. Norton, a deputy sheriff, and Mr. Johnson, and we went on a search which took us back on the creek about three-quarters of a mile from the road or anybody's house. On my first search when I was by myself the first thing I found was two old oil drums, one of them was smoked solid black and the other one wasn't, and one of them had black hair in it. You could tell about the hair on the skin that come off from the scalding; the hair was in the bottom of the branch, but I dug it up with a stick; you could dig up a hat full or more, but I just got up two or three hand fulls. I couldn't tell how long it had been placed there. * * * The next thing I found was a pole about ten foot long that had nails in each end of it, where it was used for gambling purposes * * * It was a green water oak about ten-foot long, with six or eight nails in each end of it, and that was on one side of a log buried partly in the water, and on the other side was a gambling stick in the water, about two and a half foot. * * * All of those things were in the run of the branch." Horn also testified to seeing three different sets of tracks around and about the place where the fire was made, and that one of the sets of tracks was a small track which was similar to the tracks he saw the defendant make. He, and other witnesses, testified that tracks of an ox cart were followed by them from the defendant's home down to the place in the swamp where the hogs were butchered, and from that place back to defendant's home.

Officer Norton's testimony tended to corroborate that given by witness Horn. In addition to the foregoing, it was shown that on Friday afternoon, Mrs. Horn went to defendant's home, and she stated: "I went to defendant's home on Friday evening. I saw they were grinding sausage meat and the cracklings and cooking the liver." It is also without dispute that on Sunday morning the deputy sheriff, who had a search warrant, accompanied by others, searched defendant's smokehouse and found a lot of fresh pork meat, together with a hog's backbone to which was still attached a long tail. The meat, the witnesses stated, in their best judgment, had been butchered within the last day or two. Other evidence of similar import was offered by the State.

The defendant admitted possession of the freshly killed pork meat, but strenuously denied he had stolen the hog from Horn. He, and others, testified he had bought the hog in question from one Willie Gulledge and that it was butchered at Gulledge's home. It appeared from the evidence that Gulledge lived in the same community with defendant and only a short distance from him.

From the foregoing, and also from other evidence adduced upon the trial, we cannot put the court to error for refusing the affirmative charge to defendant. We are clear to the opinion that the evidence presented a jury question, and that the trial court was without authority to direct the verdict.

Numerous exceptions were reserved to the court's rulings pending the trial. We have given careful and attentive consideration to each of these rulings and have reached the conclusion no reversible error appears.

Ground 4 of defendant's motion for a new trial, relating to the alleged objectionable argument of the solicitor, is not sustained by the record. So far as the record shows, nothing was offered in support of the motion for a new trial, except the evidence adduced upon the main trial of the case.

We refrain from a detailed discussion of the innumerable exceptions reserved to the court's rulings. It is manifest from a careful study and consideration of the entire case that the defendant was accorded a fair and impartial trial. This is clearly shown by the utterances of the court in every instance, and where this clearly appears, the accused may not complain. We are of the opinion that the able, fair, and explicit charge of the trial judge to the jury presented every question involved impartially, intelligently, and without error prejudicial to the substantial rights of the defendant.

No error appearing, and the record being regular in all respects, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.